UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JULIE NEVAREZ, ET AL.                           CIVIL ACTION

VERSUS                                              NO. 21-1855

DANA COLEMAN, ET AL.                     SECTION "R" (3)


**<u>ORDER AND REASONS</u>**


Before the Court are two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by defendants Anthony Dorris and Justin Leonard.[1] Plaintiffs De'Andre Willis and Julie Nevarez, individually and on behalf of her minor children, BN, MN, and GN (collectively "plaintiffs") oppose both motions.[2]   For the following reasons, the Court grants defendants' first motion to dismiss as to plaintiffs De'Andre Willis, BN, MN, and GN, and denies defendants' motion as to Julie Nevarez in part on the merits, and in part on the grounds of mootness.   The Court further grants defendants' second motion to dismiss as to Julie Nevarez.

---

[1]      R. Docs. 12 & 35.
[2]      R. Docs. 31 & 38.

## I.   BACKGROUND

This case arises out of the fatal shooting of decedent, Miguel Nevarez, by several officers from the Houma Police Department ("HPD") and the Terrebonne Parish Sheriff's Office ("TPSO").   On October 13, 2020, at 9:00 p.m., defendant Walter Tenney, an HPD officer, was investigating reports of gunshots in decedent's neighborhood.[3]   Plaintiffs' complaint alleges that Tenney approached the decedent, who was sitting on the driver's side of his vehicle, parked in his driveway.[4]   Tenney reportedly asked Nevarez to speak with him, and when he refused, Tenney "drew his service weapon and called for backup."[5]   Plaintiffs allege that Tenney, "without any basis in fact," reported that Nevarez possibly had a gun in his car.[6]   Tenney and other officers further reported that Nevarez had "barricaded" himself in his vehicle.[7]   Plaintiffs represent that, at this point, the officers "continued to escalate the situation" by blocking off the surrounding streets, and calling for

---

[3]      R. Doc. 26 ¶¶ 29-30.
[4]      *Id.* ¶ 30.
[5]      *Id.*
[6]      *Id.* ¶¶ 31-32.
[7]      *Id.* ¶ 34.

additional backup, which resulted in the arrival of nearly fifty officers from HPD and TPSO at the scene.[8]

Plaintiff Julie Nevarez represents that, when she tried to access her and Miguel Nevarez's home, she was denied access to her street.[9]  Ms. Nevarez alleges that she was approached by Lt. Travis Theriot, a "purported negotiator," and that she identified herself as Miguel Nevarez's wife.[10]  She contends that during her conversation with Theriot, Nevarez called her cell phone, and that Theriot "seized [her] phone at that time, refusing to return it to her or allow her and Miguel to speak, . . . even as Miguel continued to attempt to contact her."[11]  Further, Ms. Nevarez asserts that her cell phone was not returned to her that night, and that she believes it was seized "for no other purpose than to prevent her from communicating with Miguel while he was in his car."[12]

At 10:26 p.m. that night, Nevarez allegedly got out of his vehicle and ran toward the back of his house, and toward, unbeknownst to him, HPD officers Sidney Theriot and Tenney.[13]  In an effort to stop Nevarez, officer

---

[8]     *Id.* ¶ 35.
[9]     *Id.* ¶ 37.
[10]    *Id.*
[11]    *Id.*
[12]    *Id.*
[13]    *Id.* ¶ 42.

Theriot allegedly shot at Nevarez with his 40 mm "impact munition," and officer Tenney attempted to tase him.[14]   After the shooting and tasing, Nevarez allegedly regained his footing and began to run toward the front corner of his house, at which point, according to defendants, Nevarez "raised a gun towards [HPD officer] Bolgiano."[15]   Plaintiffs dispute that Nevarez raised a gun towards Bolgiano.[16]   Allegedly in response, Bolgiano fired at Nevarez as he emerged from the west side of the yard.[17]   Several other defendants also reported firing on Nevarez,[18] and plaintiffs assert that, based "on the evidence [the Louisiana State Police] collected and the autopsy report assessing Miguel's death, Bolgiano and Tenney collectively shot at Miguel approximately 20 times."[19]

The Houma Police Administration allegedly asked the Louisiana State Police ("LSP") to investigate the circumstances surrounding Nevarez's death.[20]   As part of this investigation, on October 14, 2020, hours after Nevarez's death, LSP State Trooper, Justin Leonard, secured a search

---

[14]     *Id.* ¶¶ 45-46.
[15]     *Id.* ¶ 49.
[16]     *See id.* ("Upon information and belief, discovery will contradict Bolgiano's allegation.").
[17]     *Id.* ¶ 50.
[18]     *Id.* ¶¶ 50-51, 53-54.
[19]     *Id.* ¶ 52.
[20]     *Id.* ¶ 62.

warrant for the Nevarezes' home and the vehicle Nevarez was seated in the night before.[21]  The warrant was obtained based on Leonard's affidavit in which he certified, under oath, that probable cause existed for the search, on the grounds that the car and house contained evidence of "aggravated assault upon a peace officer," in violation of Louisiana Revised Statute § 14:37.2.[22] Also as part of the investigation, on October 19, 2020, five days after Nevarez's death, LSP State Trooper, Anthony Dorris, secured a search warrant for Ms. Nevarez's cell phone that was seized the night of her husband's death.[23]  Like Leonard, Dorris submitted a search-warrant affidavit, in which he attested, under oath, that the warrant was needed "to locate any and all evidence that may aid the Louisiana State Police in their active investigation of the crime of LRS 14:37.2 Aggravated Assault Upon a Peace Officer."[24]  Finally, plaintiffs represent in their complaint that "Dorris and Leonard reported recovering the gun Miguel had allegedly aimed immediately after the shooting."[25]

---

[21]    *Id.* ¶ 63.
[22]    *Id.* ¶¶ 64-65.
[23]    *Id.* ¶ 67.
[24]    *Id.* ¶ 69.
[25]    *Id.* ¶ 101.

On October 12, 2021, plaintiffs filed a multi-count complaint in this Court against several defendants.[26]   As relevant here, plaintiffs allege in count II that movants Leonard and Dorris conducted illegal searches of Ms. Nevarez's home, car, and cell phone.  Specifically, plaintiffs' initial complaint states that Leonard and Dorris "knowingly and intentionally submitted affidavits containing false or insufficient factual statements and material omissions to procure the search warrants."[27]  Plaintiffs thus assert that the search warrants obtained by Leonard and Dorris "were unlawful as no probable cause existed for these warrants."[28]  Both Leonard and Dorris are sued in their individual capacities.[29]

Dorris and Leonard thereafter filed their first motion to dismiss, or in the alternative, motion for a more definitive statement.[30]  Movants argue that plaintiffs' claims against them should be dismissed because: (1) plaintiffs cannot assert a section 1983 claim on behalf of decedent; and (2) plaintiffs cannot defeat movants' invocation of qualified immunity because they admittedly do not have the affidavits assertedly containing the officers'

---

[26]   R. Doc. 2.
[27]   *Id.* ¶ 60.
[28]   *Id.* ¶ 88.
[29]   R. Doc. 26 ¶¶ 26-27.
[30]   R. Doc. 12.

knowing and intentionally false statements and material omissions.[31] Plaintiffs opposed the motion, representing that, after LSP turned over movants' affidavits, plaintiffs filed an amended complaint, which "now cites the contents of the affidavits specifically[,] and the false or insufficient factual statements and material omissions therein."[32] Plaintiffs additionally represented that they are bringing their section 1983 claim against movants on behalf of Ms. Nevarez, not her deceased husband.[33]

Following plaintiffs' amended complaint, Dorris and Leonard filed a second motion to dismiss, arguing that: (1) plaintiffs have failed to allege sufficient facts to show that movants violated their constitutional rights, and that (2) they are thus entitled to qualified immunity.[34]  Plaintiffs again oppose this motion, arguing that they have alleged facts sufficient to defeat movants' invocation of qualified immunity at the motion-to-dismiss stage.[35]

The Court considers the parties' arguments below.

---

[31]   R. Doc. 12-1 at 6-11.

[32]   R. Doc. 31 at 3.

[33]   *Id.* at 5-6.

[34]   R. Doc. 35-1 at 5-12.

[35]   R. Doc. 38.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F.

App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

While conducting this 12(b)(6)-type analysis, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). "It is well-established that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013) (per curiam) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

Defendants attach the following materials to their second motion to dismiss: (1) Leonard's affidavit for a search warrant of the Nevarezes' car and house, and the accompanying search warrant; (2) Dorris's affidavit for a search warrant of Ms. Nevarez's phone, and the accompanying search warrant; and 3) Dorris's affidavit for a search warrant of the Nevarezes' DVR Security System, and the accompanying search warrant.[36]   Because these documents are referred to and quoted extensively in plaintiffs' complaint, the Court may consider them in ruling on defendants' motions to dismiss. *Id.*; *Guillot v. Lopinto*, No. 20-1604, 2021 WL 779180, at *7 (E.D. La. Mar. 1,

---

[36]   R. Doc. 35-3.

2021) (considering medical records attached to defendants' motion to dismiss because the records "are referenced in detail throughout the Complaint" and "are central to Plaintiffs' claims").

## III.  DISCUSSION

### A.  Defendants' First Motion to Dismiss

In their first motion to dismiss, movants assert that plaintiffs cannot maintain their section 1983 claim against Leonard regarding the search warrant for the Nevarezes' home and car because the claim is impermissibly brought on behalf of the decedent.[37]  Citing *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979), movants argue that, because a deceased person is neither a "citizen" nor "other person" within the meaning of section 1983, plaintiffs cannot assert a Fourth Amendment violation "for a purportedly illegal search of Decedent's home or vehicle."[38]  In response, plaintiffs contend that this case is distinguishable from *Whitehurst* because, unlike in *Whitehurst*, plaintiffs allege that Leonard's unconstitutional actions deprived Ms. Nevarez, not the decedent, of her Fourth Amendment rights.[39]  Plaintiffs additionally point out that, in their amended complaint, they allege "specific

---

[37]    R. Doc. 12-1 at 6-7.

[38]    *Id.* at 7.

[39]    R. Doc. 31 at 5-8.

facts" that establish that the movants obtained warrants to search Ms. Nevarez's "own home, car, and cell phone," all of which are places where she had a legitimate expectation of privacy.[40]

In reviewing the operative complaint, the Court finds that plaintiffs do not seek redress for a deprivation of Miguel Nevarez's constitutional rights. Specifically, the amended complaint asserts that movants obtained unlawful search warrants for "Mrs. Nevarez's phone, her and Miguel's home, and the car Miguel was in, which was registered to Mrs. Nevarez."[41]  It goes on to state that, as "a direct and proximate result of the searches, . . . Mrs. Nevarez suffered and continues to suffer substantial damages, including compensatory damages, impairment to her reputation, personal humiliation, and mental and emotional injury, and she seeks punitive damages for the unconstitutional searches."[42]  Thus, because plaintiffs assert that the movants violated Ms. Nevarez's constitutional rights, not the decedent's, the Court denies movants' motion to dismiss with respect to Ms. Nevarez's claims brought on her own behalf.  *See Ryland v. Shapiro*, 708 F.2d 967, 973 n.6 (5th Cir. 1983) ("*Whitehurst* is not on point here because

---

[40]    *Id.* at 7-8.

[41]    R. Doc. 26 ¶ 100.

[42]    *Id.* ¶ 104.

the alleged unconstitutional actions here deprive the parents', not the decedent's, protected rights.").

But to the extent that the decedent's children seek to assert Fourth Amendment claims against the movants, the Court finds that they lack standing to do so. To establish standing to challenge a search under the Fourth Amendment, plaintiffs must demonstrate that their own legitimate expectation of privacy was violated by the challenged government conduct. *See Barry v. Freshour*, 905 F.3d 912, 914 (5th Cir. 2018) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." (quoting *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978))). Plaintiffs bear the burden of establishing that they each had a reasonable and legitimate expectation of privacy. *Id.* Here, although plaintiffs assert that Ms. Nevarez had a legitimate expectation of privacy in her own home, car, and cell phone, they have not asserted that the other plaintiffs shared this reasonable expectation of privacy. Accordingly, the Court finds that Willis, BN, MN, and GN have failed to plausibly allege that they have standing to challenge the search of the car, house, and cell phone. The Court thus dismisses for lack of standing the claims against movants brought by Willis, and Ms. Nevarez on behalf of her minor children BN, MN, and GN.

Movants also assert that plaintiffs' claims should be dismissed because their complaint included only conclusory allegations that movants made material misrepresentations and omissions in their affidavits.[43]   Movants contend that plaintiffs' allegations were purely conclusory because plaintiffs admitted in their initial complaint that they "did not have the affidavits which were drafted in support of the accompanying search warrants[,] but simultaneously allege[d], without providing specific facts or evidentiary support," that movants made material misrepresentations and omissions in said affidavits.[44]   In response, plaintiffs represent that, since the filing of defendants' motion, LSP has produced the relevant affidavits, and that plaintiffs have amended their complaint to plead specific allegations regarding the affidavits.[45]

Given that the amended complaint cites extensively to the affidavits, the Court denies as moot defendants' motion to dismiss based on the plaintiffs' allegedly speculative claims and lack of factual support.  Further, defendants' motion in the alternative for a more definitive statement is also denied as moot, in light of plaintiffs' amended complaint that addresses

---

[43]   R. Doc. 12-1 at 7-11.

[44]   *Id.* at 10-11.

[45]   R. Doc. 31 at 14-15; *see also* R. Doc. 26.

movants' requests for more clarity about which defendants are sued in which counts.

Having granted defendants' first motion to dismiss as to the decedent's children's claims based on lack of standing, the Court proceeds to evaluate defendants' second motion to dismiss as it pertains to Ms. Nevarez's claims.

### B.    Defendants' Second Motion to Dismiss

In response to plaintiff's amended complaint, defendants Leonard and Dorris filed a second motion to dismiss the claims against them under Rule 12(b)(6).[46]   In their second motion, movants contend that Ms. Nevarez's section 1983 claims against them should be dismissed because defendants are entitled to qualified immunity.  Specifically, they assert that Ms. Nevarez has failed to plead sufficient facts to overcome defendants' qualified-immunity defense.

Section 1983 of Title 42 of the United States Code provides a cause of action for plaintiffs whose federal rights are violated under the color of state law.  42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the

---

[46]    R. Doc. 35.

violation was committed by someone acting "under color of state law." *Id.* The qualified-immunity defense to such claims shields government officials who perform discretionary functions from suit and liability under section 1983, "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (internal quotation marks omitted). At the motion-to-dismiss stage, the Court looks to "defendant's conduct *as alleged in the complaint*" to determine whether a defendant is entitled to qualified immunity. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

"Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). To satisfy that burden at the motion-to-dismiss stage, the plaintiff must allege facts sufficient to demonstrate (1) that the defendant violated a constitutional right, and (2) that the violated right was "clearly established" at the time of defendants' alleged actions. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, an "officer will be entitled to qualified immunity if no constitutional violation occurred or if the conduct 'did not violate law clearly established at the

time.'" *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1127 (2022).  It is within the Court's discretion to decide which prong to address first.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson*, 555 U.S. 223, 236 (2009)).

Here, Ms. Nevarez asserts that movants are liable under section 1983 because they "knowingly and intentionally submitted affidavits containing false or insufficient factual statements and material omissions to procure the search warrants" of her cell phone, house, and car.[47]  Movants assert that they are entitled to qualified immunity because plaintiff's "conclusory allegations" are insufficient to "properly oppose a qualified immunity defense."[48]  Because movants contend that plaintiff has failed to plead sufficient facts to show a Fourth Amendment violation, the Court begins with the threshold question of whether, taking the facts in the light most favorable to the plaintiff, defendants' alleged conduct violated a constitutional right. *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity."); *Derischebourg v. Clark*, No. 15-

---

[47]   R. Doc. 26 ¶ 72.
[48]   R. Doc. 43 at 3.

1712, 2016 WL 98617, at *5 (E.D. La. Jan. 8, 2016) ("Plaintiff has failed to plead sufficient facts to show that any of the Defendants violated his constitutional rights, [and thus] . . . he has failed to plead enough facts to satisfy the first prong of his burden to prove the qualified immunity defense is inapplicable.").

The Fifth Circuit "has recognized two different kinds of claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: (1) claims under *Franks v. Delaware*, 438 U.S. 154 (1978)," and "(2) claims under *Malley v. Briggs*, 475 U.S. 335 (1986)." *Melton v. Phillips*, 875 F.3d 256, 270 (5th Cir. 2017) (en banc) (J. Dennis dissenting); *see also Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir. 2022) (analyzing plaintiffs' "two alternative" Fourth Amendment claims, "one premised on *Malley* . . . and the other premised on *Franks*").

Under the first type of claim, known as *Franks* liability, "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155-56); *see also Terwilliger v. Reyna*, 4 F.4th 270, 281-82 (5th Cir. 2021) (applying the

*Franks* framework to a plaintiff's section 1983 claim at the motion-to-dismiss stage).  The Fifth Circuit has likewise held that "the intentional or reckless omission of material facts from a warrant application [or affidavit] may amount to a Fourth Amendment violation."  *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).  To determine whether the false statements or omissions are necessary to the probable-cause finding, courts look to whether "'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'"  *Terwilliger*, 4 F.4th at 281-82 (quoting *Franks*, 438 U.S. at 171-72).

Under the second type of claim, premised on the Supreme Court's holding in *Malley v. Briggs*, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'"  *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) (quoting *Malley*, 475 U.S. at 344-45).  If a "reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant," the officer's "shield of immunity [will] be lost."  *Malley*, 475 U.S. at 344-45.  Unlike *Franks*, the "*Malley* wrong is not the presentment of false evidence, but the

18

obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton*, 875 F.3d at 264.

Probable cause exists "when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109 (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Thus, the officer's affidavit must make it clear that "there is some nexus" between the areas to be searched and the alleged criminal activity being investigated. *Id.* (citing *Warden v. Hayden*, 387 U.S. 294, 302 (1967)). And although the Court accords "great deference" to a magistrate judge's finding of probable cause, the Court will not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 914-15 (1984) (quoting *Gates*, 462 U.S. at 239).

Here, Ms. Nevarez alleges that both Leonard and Dorris violated her rights under the Fourth Amendment to be free from unreasonable searches by authoring search-warrant affidavits that contained false statements or material omissions. Before the Court can evaluate Ms. Nevarez's *Franks* claims, it must first determine whether Leonard's and Dorris's affidavits, on their face, support a finding of probable cause. This is because the

"principles of *Franks* have never been applied to facially invalid warrants." *See Kohler*, 470 F.3d at 1114 (explaining that the *Franks* materiality analysis "presumes that the warrant affidavit, on its face, supports a finding of probable cause," because a plaintiff "cannot hold an officer liable under *Franks* for intentionally omitting important exculpatory information from a warrant affidavit when the officer has also committed a *Malley* violation"); *see also Porter v. Lear*, 751 F. App'x 422, 429-30 (5th Cir. 2018) (finding first that the officer's affidavit was not "so lacking in indicia of probable cause as to render" the officer's belief in its existence unreasonable, and then finding that the alleged omissions were not material).   Accordingly, the Court first determines whether each officer's affidavit is facially sufficient, and if so, then whether plaintiff has plausibly alleged a *Franks* violation.

### 1.     *Officer Leonard*

Leonard's affidavit for a search warrant of the Nevarezes' home and car indicated that he sought a warrant for:

> 356 Polk Street, Houma, LA, 70360, where evidence of a crime may be located to wit: Any and all weapons to include firearms, ammunition, items pertaining to weapons and/or ammunition, video surveillance recording devices, electronic devices that may store messages and/or video, handwritten notes and/or any and all evidence pertaining to the shooting.  Also requested in this search warrant is the curtilage within the property to include the white Mitsubishi sedan . . . which said property constitutes

evidence of the violation of . . . 1 Count of RS14:37.2—
AGGRAVATED ASSAULT UPON A PEACE OFFICER.[49]

Leonard's affidavit also asserted that his determination of probable cause

was "based" on the following facts:

> On Tuesday, October 13th, 2020, members of the Louisiana State
> Police Criminal Investigations Division - Houma Field Office
> (LSP-CID) were notified of an officer involved shooting (OIS) at
> the residence of 356 Polk Street.  The initial complaint was that
> of a subject armed with a weapon illegal[l]y discharging the
> weapon.  Officers with Houma Police Department (HPD) and
> Terrebonne Parish Sheriff's Office (TPSO) responded and made
> contact with the subject at 356 Polk Street.
>
> During the course of the investigation, the subject barricaded
> himself inside of a white Mitsubishi sedan backed in the
> driveway.   Attempts to negotiate with the subject were
> unsucces[s]ful.  The subject later exited the vehicle and several
> less lethal attempts were made which yielded negative results.
> The subject then presented a firearm toward officers.  Several
> members of HPD and TPSO responded to the threat and
> discharged their weapons.   The subject was struck and
> succumbed to his injuries.[50]

### i.   *Malley* Liability

To determine whether Leonard's affidavit was facially lacking in

probable cause, the Court looks to whether the affidavit "establish[es] a

nexus between the house [and car] to be searched, and the evidence sought."

*United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003).  That nexus "may

---

[49]   R. Doc. 35-3 at 1.
[50]   *Id.*

be established through direct observation or through 'normal inferences as to where the articles sought would be located.'" *Id.* (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)).

Here, the Court finds that Ms. Nevarez has not alleged facts sufficient to plausibly suggest that Leonard secured a search warrant that was facially lacking in probable cause. Leonard's affidavit represents that he sought a warrant for the following information: "all weapons to include firearms, ammunition, items pertaining to weapons and/or ammunition, video surveillance recording devices, electronic devices that may store messages and/or video, handwritten notes and/or any and all evidence pertaining to the shooting."[51] First, the Court finds that the affidavit supports a reasonable probability that the above items "constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109. Specifically, the Court finds that a magistrate judge could infer that whether or not Nevarez had weapons or ammunition inside his house or car could be relevant to the alleged crime and the dispute over whether he "presented a firearm toward the officers."[52] It would also be relevant to the extent that the magistrate judge and the responding officers believed that Nevarez was involved in the initial

---

[51]   R. Doc. 35-3 at 1.

[52]   *Id.*

complaint that an unnamed subject was "armed with a weapon" and was "illegally discharging the weapon."[53]  A magistrate judge could similarly infer that any video surveillance or recording devices would be relevant to the alleged crime given that such devices may have recorded the disputed encounter between Nevarez and the officers.

Moreover, the Court finds that the affidavit also provided the magistrate judge with "sufficient reliable information from which [the judge] could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched." *United States v. McKinney*, 758 F.2d 1036, 1042 (5th Cir. 1985).  Although the investigation concerns whether Nevarez, while standing on his lawn, pointed a firearm at a law enforcement officer, that does not preclude the inference that other locations besides the yard would be reasonable targets of a search warrant to find evidence related to the alleged crime.  This seems especially true given that the affidavit makes clear that although the actual shooting did not occur in the vehicle, the police engaged with the decedent extensively while he was sitting in his vehicle.  It also is reasonable to infer that to the extent Nevarez had any firearms, ammunition, or home security footage of the encounter, that such items would be stored in his home or car.  *See United States v.*

---

[53]     *Id.*

*Green*, 634 F.2d 222, 226 (5th Cir. 1981) ("The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained."); *cf. United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) (finding that the issuing magistrate had probable cause to believe that evidence related to a shooting that occurred in an apartment complex parking lot would be found inside one of the participant's apartments that had "a security camera pointed at the parking lot where the shooting occurred").

Accordingly, based on the totality of the circumstances, the warrant affidavit provided sufficient support for the inference that evidence of Nevarez's alleged aggravated assault upon a peace officer might have been discovered in his car and home.  Ms. Nevarez has therefore failed to plausibly allege that Leonard relied on a facially invalid warrant that lacked probable cause.

   ii.   *Franks* Liability

Having determined that Leonard's warrant was sufficient on its face, the Court next addresses whether plaintiff's assertions that Leonard

"misrepresented" the reason for the search warrant and omitted the location of the shooting plausibly assert a claim for a Fourth Amendment violation under *Franks*.

Under the first prong of *Franks*, the Court must evaluate whether Leonard's affidavit included a false statement or material omission knowingly and intentionally or with reckless disregard for the truth. The Court finds that Ms. Nevarez has sufficiently alleged that Leonard intentionally, or with reckless disregard for the truth, included in his affidavit false statements and omissions. Although the complaint offers little beyond the assertion that Leonard acted with the requisite intent based on an ulterior-motive theory,[54] precedent is clear that, at the pleading stage, a plaintiff's allegation of "ill will suffices." *Floyd*, 351 F. App'x at 896 (noting that, because "state of mind is a critical element of the underlying constitutional violation," an allegation of ill will is sufficient to withstand a motion to dismiss, and that plaintiff "at a later stage" will be required to produce "specific support for his claim of unconstitutional motive"); *Weaver v. Stroman*, No. 16-1195, 2019 WL 4738914, at *5 (W.D. Tex. Sept. 27, 2019), *aff'd in part, rev'd in part and remanded sub nom.*, *Terwilliger*, 4 F.4th 270 ("While the complaint offers ambiguous allegations of the state of mind of

---

[54]    R. Doc. 38 at 13 & n.3.

Defendants . . . , at this early stage of the case, with no record yet developed, dismissal on qualified immunity grounds is inappropriate.").

Under the second prong of *Franks*, the Court must evaluate whether, excluding Leonard's alleged errors and omissions, the remaining "corrected affidavit" establishes probable cause for the search warrant of the house and car. *Terwilliger*, 4 F.4th at 283. To make this "practical" and "common-sense decision," the Court must determine whether, given all the circumstances set forth in the affidavit [minus the alleged misstatements and omissions], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004).

Considering the totality of the circumstances, the Court finds that a corrected affidavit that expressly stated that the decedent was shot in his yard would not have impacted the magistrate judge's probable-cause finding. As an initial matter, it is clear from the affidavit that the alleged crime did not occur in the white Mitsubishi, given that Leonard states that the "subject later exited the vehicle . . . [and] then presented a firearm toward officers."[55] Thus, the inclusion of a specific statement in the affidavit that the shooting

---

[55]   R. Doc. 35-3 at 1.

occurred in the front yard of the Nevarez home would do little to impact a magistrate judge's finding of probable cause as to the car.

As to the house, the Court is unpersuaded that the warrant affidavit would cause a reasonable magistrate judge to mistakenly assume that the shooting occurred within the house, and thus find probable cause for the search, when the affidavit makes no mention of entry into the house. *See Croy v. Arrambide*, No. 05-40, 2006 WL 8433824, at *8 (W.D. Tex. Sept. 27, 2006) (holding that an affiant's failure to highlight "the fact that only pornography and not children pornography was viewed on the Plaintiff's home computer" did not negate probable cause when the affidavit "made no mention of child pornography"). The affidavit is also clear that at least some of the officers' contact with the decedent occurred outside of the house, noting that the decedent "barricaded himself inside of a white Mitsubishi sedan *backed in the driveway*," but that he "later exited the vehicle."[56] Taken together, there is nothing to suggest that a magistrate judge would infer that the relevant events occurred *inside* the residence after the decedent exited the vehicle. This conclusion is only strengthened by Leonard's explicit

---

[56]     *Id.* (emphasis added).

request that the search include not just the house, but also "the curtilage within the property."[57]

The Court notes that, although movants attempt to show that probable cause existed because the search of the house uncovered a relevant "DVR device" of the home's security system,[58] the movants in the same motion also cite established precedent that the validity of a search warrant must be assessed "on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing Magistrate," and thus does not include evidence that results from the search.[59]  *Maryland v. Garrison*, 480 U.S. 79, 85 (1987).  Thus, the Court rejects movants' attempt to establish probable cause retrospectively, based on the results of the search warrant of the Nevarezes' home.

In sum, the Court finds that Ms. Nevarez has not sufficiently alleged that Leonard's false statements and omissions were material to the magistrate judge's finding of probable cause.  *See Lucky Tunes #3, L.L.C. v. Smith*, 812 F. App'x 176, 182 (5th Cir. 2020) ("We hold that the affidavits established probable cause even if we omit the [material falsehoods] and insert the facts that [were omitted]."). Accordingly, the Court grants

---

[57]   *Id.*
[58]   R. Doc. 35-1 at 8.
[59]   R. Doc. 35-1 at 8-9.

defendants' motion to dismiss as to Ms. Nevarez's allegations against Leonard.

### 2.   *Officer Dorris*

Dorris's affidavit represents that he sought a warrant for the following information from Ms. Nevarez's phone:

> 1. Any voice messages, text message[s], phone numbers, pictures, GPS, and other electronic data and or media contained within the hardware, or cellular operating system of the cellular phone that identifies the owner and or possessor of the cellular phone.

> 2. Any and all voice messages, text messages, phone numbers, pictures, GPS, and other electronic data and or media contained within the hardware, software, and or microprocessors of the cellular phone related to the below listed crimes.

> 3. Any voice messages, text message[s], phone numbers, pictures, GPS, and other electronic data and or media contained within the Mini Secure Digital (MiniSD), MultiMedia Card Mobile (MMCmobile), or any other types of card slots support removable memory cards or specialized peripherals, such as an SDIO Wi-Fi card and or cellular operating system related to the below listed crimes.

> 4. Any photographs, text messages, phone logs, or GPS information located within the internal memory of the cellular phone related to the below listed crimes.

> 5. Any and all hidden, erased, compressed, password protected, and/or encrypted files as they relate to the below listed crimes.

> 6. Photographs of the interior and exterior of the cellular phone[.]

> 7. DNA swabs both interior and exterior of the cellular phone[.]

8. Latent prints of both interior and exterior of the cellular phone[.]

9. Any and all voice messages, text message, phone numbers, pictures, GPS, and other electronic data and or media contained within Wireless communications such as infrared (i.e., IrDA) or Bluetooth that may be built in the device related to the below listed crimes.

10. Personal Information Management (PIM) applications that includes phonebook and date book facilities, and a means to synchronize PIM information with a desktop computer.[60]

Dorris's affidavit asserts that the above information stored on Ms. Nevarez's phone is "believed to contain evidence" of the crime of aggravated assault upon a peace officer.[61]   In support of this assertion, Dorris's affidavit recounts the same factual scenario that was described in Leonard's affidavit, and further notes that "[d]uring negotiations with N[evarez], his wife's cellular phone was used to make contact with him."[62]

i.   *Malley* Liability

In order to evaluate whether Dorris's affidavit supported a reasonable belief that probable cause existed to search Ms. Nevarez's cell phone, the Court must first determine what level of specificity is required to establish a facially valid warrant for a cell phone.  Whether or not an affidavit must

---

[60]   R. Doc. 35-3 at 5.

[61]   *Id.* at 5-6.

[62]   *Id.* at 6.

explain how each type of data sought on a cell phone is supported by probable cause is an open question in the Fifth Circuit.  The Fifth Circuit in *United States v. Morton* held that "[a]bsent unusual circumstances, probable cause is required to search each category of content" in an individual's cell phone. 984 F.3d 421, 426 (5th Cir. 2021), *reh'g en banc granted, opinion vacated*, No. 19-10842, 2021 WL 1990794 (5th Cir. May 18, 2021).  Applying this principle, the court in *Morton* held that an officer's affidavit established probable cause to search the contacts, call logs, and text messages of a defendant's phone, but not to search photos on the phone.  *Id.* at 427.  The Fifth Circuit has since vacated its decision in *Morton*, reheard the case en banc, but has not yet issued its en banc ruling.  *See United States v. Jackson*, No. 20-30778, 2022 WL 1548669, at *5 (5th Cir. May 16, 2022) (noting that defendant's argument that an affidavit did not provide probable cause to search the different categories of information on his cell phone was premised on the now vacated decision in *Morton*).  Aside from the *Morton* decision, neither the Supreme Court nor the Fifth Circuit has specifically resolved the issue of whether probable cause is needed to search each category of information within a cell phone, as opposed to the cell phone itself.

In light of the vacated decision in *Morton*, district courts have applied the "principles outlined" in the Supreme Court's decision in *Riley v.*

*California*, 573 U.S. 373, 394 (2014), and the Fifth Circuit's opinion in *United States v. Triplett*, 684 F.3d 500 (5th Cir. 2012). *See United States v. Edwards*, No. 20-68, 2021 WL 7278984, at *4 (N.D. Tex. Aug. 24, 2021) ("[T]he Court must apply the principles outlined in *Riley*—that law enforcement must obtain a warrant for the search of a mobile phone incident to arrest—and in *Triplett*—that a warrant need not specify each category to be searched during the search of a computer."). In looking to these same principles, the Court finds instructive the Fifth Circuit's decision in *Triplett*. In *Triplett*, the defendant argued that a warrant for "all articles of clothing of Kaila Morris, bed sheets, electronic devices, electronic memory devices, cell phone, DNA, hand digging and cutting tools, vehicles, and utility vehicles" was overly broad and not reasonably likely to locate evidence concerning a missing child. *Id.* at 505. The Fifth Circuit rejected the defendant's argument, and held that the list of items reasonably pertained to defendant's interactions with the missing child. *Id.* Specifically, the Court held that his "cell phone" was "reasonably related to [the defendant's] knowledge about [the missing child's] last use of her phone," and that a general search of his computer was not too comprehensive because "a computer search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause." *Id.* The court also noted that with regard to the

32

computer search, "officers should limit exposure to innocent files, . . . [but] 'in the end, there may be no particular substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders.'" *Id.* at 506 (quoting *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011)).

Applying the above principles, the Court finds that Ms. Nevarez has failed to plausibly allege that Dorris provided a facially deficient search warrant for her phone. Given that the affidavit represents that Ms. Nevarez's phone was used to contact the decedent around the time of the alleged assault, the affidavit establishes a nexus between the alleged crime being investigated and the cell phone. The Court also finds that the warrant was as broad as "reasonably required to locate the items described in the [affidavit] based on probable cause." *See id.* at 505 (noting that "in the end, there may be no particular substitute for actually looking in many (perhaps all) folders" on a computer); *see also Riley*, 573 U.S. at 393 (describing cell phones as "minicomputers that also happen to have the capacity to be used as a telephone"). This conclusion is supported by Dorris's assertion in his affidavit that based on his "training and experience," and concern about the concealment of criminal evidence on cell phones, authorities may have "to examine all the stored data to determine which particular files are evidence

33

or instrumentalities of crime."[63]  *See Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("[O]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists.").

The Court thus finds that Dorris's affidavit, on its face, supplies probable cause to search Ms. Nevarez's phone.  Accordingly, Ms. Nevarez has failed to plausibly allege a *Malley* defect.

ii.    *Franks* Liability

Having found that the warrant affidavit did not facially lack probable cause, the Court proceeds to address plaintiff's *Franks* arguments.  Ms. Nevarez alleges that Dorris "knowingly, intentionally, and with reckless disregard for the truth" submitted an affidavit "containing false, insufficient, and misleading statements to secure an overbroad search warrant" of her phone.[64]

Ms. Nevarez first asserts that Dorris "misrepresented" that the search warrant of her phone was for the LSP's investigation of the decedent's alleged crime of aggravated assault upon a peace officer.[65]  Plaintiff contends that

---

63    *Id.* at 6-7.
64    R. Doc. 26 ¶ 103.
65    *Id.* ¶ 101.

this is a false statement, and that the true reason for the search was to find "text messages to support [defendants'] narrative that Miguel intended to seek suicide by cop."[66]   Next, Ms. Nevarez contends that Dorris's affidavit also included the false statement that her phone "was secured as evidence after the incident," when in actuality it was "seized" before Nevarez's death.[67] Ms. Nevarez further contends that Dorris made a material omission in failing to state who used her cell phone to contact Nevarez.  Specifically, plaintiff represents that Dorris provided "intentionally vague . . . statements to suggest probable cause existed to search Mrs. Nevarez's phone, including by stating the cell phone was used during 'negotiations' with Miguel—without stating who used the cell phone."[68]   Movants contend that Dorris's misstatement that the phone was seized during, not after, the shooting, is immaterial, and that the content on the phone was relevant to the criminal investigation because it was allegedly used during negotiations with the decedent.[69]

Under the first prong of *Franks*, the Court finds that Ms. Nevarez has sufficiently alleged that Dorris intentionally, or with reckless disregard for

---

[66]   *Id.* ¶ 70.
[67]   *Id.* ¶ 69.
[68]   *Id.*
[69]   R. Doc. 35-1 at 5-7.

the truth, included in his affidavit false statements with regard to: (1) when the phone was seized, and (2) that the phone was "collected as evidence due to possible information that is believed to be stored on the electronic device[] supporting the aforementioned charge[]"[70] of assault of a police officer.  The Court also finds that plaintiff has sufficiently alleged that Dorris acted with reckless disregard for the truth by omitting who used Ms. Nevarez's phone to negotiate with the decedent.

But under the second prong of *Franks*, Ms. Nevarez has failed to sufficiently allege that these false statements and material omissions were necessary to establish probable cause.  The Court finds that absent the allegedly false statements and the inclusion of the allegedly omitted material fact, the corrected affidavit would contain sufficient information to satisfy the probable-cause requirement.  *See Winfrey*, 901 F.3d at 495 (explaining that a "corrected" affidavit would "excise false statements" and "include reference to the material fact[s] . . . which were omitted from [the faulty] affidavit").

Here, the corrected affidavit would: (1) specify who used the phone to negotiate with the decedent, and (2) omit that the "phone was secured as evidence after the incident" and that a "search warrant is being applied for

---

[70]    R. Doc. 35-3 at 7.

to locate any and all evidence that may aid the Louisiana State Police in their active investigation of the crime of LRS 14:37.2 Aggravated Assault Upon a Peace Officer."[71]   These changes to Dorris's affidavit are not fatal to the finding that there is a "fair probability" that evidence of the alleged crime could be found on Ms. Nevarez's cell phone.  *Froman*, 355 F.3d at 889. Specifically, the reconstructed affidavit still alleges that Ms. Nevarez's phone was used to contact the decedent in the middle of the incident, and that the affiant was requesting a search warrant for certain voice messages, text messages, phone numbers, etc. that were "related to" the crime of aggravated assault upon a peace officer.[72]   Based on these assertions, a reasonable magistrate judge could conclude that there was a fair possibility that the phone contained evidence about Nevarez's state of mind and perspective in the moments leading up to the disputed crime.  Accordingly, the Court finds that plaintiff has not plausibly alleged that Dorris's false or incomplete allegations were pertinent to the magistrate judge's finding of probable cause.

The Court thus finds that, even accepting Ms. Nevarez's allegations as true and viewing them in the light most favorable to her, the amended

---

[71]    *Id.* ¶ 69.
[72]    R. Doc. 35-3 at 5-6.

complaint has not plausibly pleaded a *Franks* violation against Dorris. Accordingly, the Court grants defendants' motion to dismiss as to Ms. Nevarez's allegations against Dorris.

In sum, Ms. Nevarez has failed to plausibly allege that movants violated a constitutional right, meaning that she has failed to state a section 1983 claim against either Leonard or Dorris. Thus, the Court grants defendants' second motion to dismiss plaintiff's section 1983 claims against them.

## IV.  CONCLUSION

For the foregoing reasons, defendants' first motion to dismiss[73] is GRANTED IN PART and DENIED IN PART. The motion is granted as to the claims asserted against movants by Willis, and Ms. Nevarez on behalf of her minor children BN, MN, and GN. Willis, BN, MN, and GN's claims against Leonard and Dorris are DISMISSED, without leave to amend. Defendants'

---

[73]     R. Doc. 12.

first motion to dismiss is denied as to the claims asserted against movants by Ms. Nevarez on her own behalf.

Further, defendants' second motion to dismiss[74] is GRANTED.  The Court DISMISSES Ms. Nevarez's section 1983 claims against Leonard and Dorris, with leave to amend within twenty-one days of this Order.

New Orleans, Louisiana, this   7th   day of July, 2022.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[74]    R. Doc. 35.