# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULIE NEVAREZ, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1855** |
| **DANA COLEMAN, ET AL** | **SECTION: "P" (5)** |

## <u>ORDER AND REASONS</u>

Before the Court is a Motion to Stay All Discovery Pending Resolution of Defendants' Qualified Immunity Defense by the Fifth Circuit filed on behalf of Defendants Anthony Dorris and Justin Leonard.[1] Plaintiffs oppose the motion.[2] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

### A.  Factual Background

This case arises out of the tragic fatal shooting of Miguel Nevarez on the lawn of his own home by officers from the Houma Police Department ("HPD") and the Terrebonne Parish Sheriff's Office ("TPSO"). On October 13, 2020, at 9:00 p.m., Defendant Walter Tenney, an HPD officer, was investigating reports of gunshots in Mr. Nevarez's neighborhood.[3] Tenney allegedly approached Mr. Nevarez, who was sitting on the driver's side of his vehicle, parked in the driveway of his residence.[4] Tenney reportedly asked Mr. Nevarez to speak with him, and when Nevarez refused, Tenney "drew his service weapon and called for backup."[5] Plaintiffs allege that Tenney, "without any basis in fact," reported that Mr. Nevarez possibly had a gun in his car.[6] Tenney and

---

[1] R. Doc. 74.
[2] R. Doc. 76.
[3] R. Doc. 47 ¶¶ 28–29.
[4] *Id.* ¶ 29.
[5] *Id.*
[6] *Id.* ¶ 30.

other officers further reported that Mr. Nevarez had "barricaded" himself in his vehicle.[7] Plaintiffs represent that, at this point, the officers "continued to escalate the situation" by blocking off the surrounding streets, and calling for additional backup, which resulted in nearly fifty officers from HPD and TPSO arriving at the scene.[8]

Plaintiffs allege that when Julie Nevarez, Mr. Nevarez's wife, tried to access Mr. Nevarez and her home, she was denied access to her street.[9] Ms. Nevarez alleges that she was approached by Lt. Travis Theriot, an officer she describes as a "purported negotiator," to whom she identified herself as Mr. Nevarez's wife.[10] She contends that during her conversation with Theriot, Mr. Nevarez called her cell phone, and that Theriot seized her phone, refusing to let her talk to Mr. Nevarez.[11]

At 10:26 p.m. that night, Mr. Nevarez allegedly left his vehicle and ran toward the back of his house, and toward, unbeknownst to him, HPD officers Sidney Theriot and Tenney.[12] In an effort to stop Mr. Nevarez, Officer Theriot allegedly shot at Mr. Nevarez with his 40 mm "impact munition," and Officer Tenney attempted to tase him.[13] Mr. Nevarez allegedly stumbled but regained his footing and began to run toward the front corner of his house, at which point, according to defendants, Mr. Nevarez "raised a gun towards [HPD Officer] Bolgiano."[14] Plaintiffs dispute that Mr. Nevarez raised a gun towards Bolgiano.[15] Allegedly in response, Bolgiano fired at Mr. Nevarez as he emerged from the west side of the yard.[16] Several other defendants also

---

[7] *Id.* ¶ 33.
[8] *Id.* ¶¶ 34–35.
[9] *Id.* ¶ 36.
[10] *Id.* ¶¶ 35–36.
[11] *Id.* ¶ 36.
[12] *Id.* ¶ 41.
[13] *Id.* ¶¶ 44–45.
[14] *Id.* ¶ 48.
[15] *See id.* ("Upon information and belief, discovery will contradict Bolgiano's allegation.")
[16] *Id.* ¶ 49.

reported firing on Mr. Nevarez,[17] and Plaintiffs assert that Mr. Nevarez was ultimately shot at approximately 20 times.[18]

The Houma Police Administration allegedly asked the Louisiana State Police ("LSP") to investigate the circumstances surrounding Mr. Nevarez's death.[19] As part of this investigation, on October 14, 2020, hours after Mr. Nevarez's death, LSP State Trooper Justin Leonard secured a search warrant for the Nevarez home and the vehicle in which Mr. Nevarez was seated the preceding night, which Plaintiffs allege was registered to Ms. Nevarez.[20] Also as part of the investigation, on October 19, 2020, five days after Mr. Nevarez's death, LSP State Trooper Anthony Dorris secured a search warrant for Ms. Nevarez's cell phone that was seized the night of her husband's death.[21] Plaintiffs allege LSP State Troopers Leonard and Dorris knowingly and intentionally submitted affidavits containing false or insufficient factual statements and material omissions to procure the search warrants.[22]

Prior to filing this lawsuit, Plaintiffs allegedly submitted public records requests to the LSP and the Terrebonne Parish Consolidated Government ("TPCG"), which governs the HPD, seeking information about the circumstances of Mr. Nevarez's death.[23] Plaintiffs contend both entities' records custodians failed to timely comply with the requests and have denied Plaintiffs the right to inspect the requested records.[24]

---

[17] *Id.* ¶¶ 49–50, 52–53.
[18] *Id.* ¶ 51.
[19] *Id.* ¶ 61.
[20] *Id.* ¶ 62.
[21] *Id.* ¶ 69.
[22] *Id.* ¶ 76.
[23] *Id.* ¶¶ 83, 90
[24] *Id.* ¶¶ 89–90, 94.

### B. *Relevant Procedural Background*

On October 12, 2021, Plaintiffs filed a complaint in this Court that included claims against three groups of defendants for their respective, alleged roles related to the death of Mr. Nevarez: (1) the HPD and TPSO officers who allegedly shot at Mr. Nevarez, as well as their on-scene supervisors; (2) the LSP State Troopers, Justin Leonard and Anthony Dorris, who investigated Mr. Nevarez's death; and (3) the TPCG and LSP records custodians.[25]

The LSP State Troopers ("Movants"), Leonard and Dorris, are sued in their individual capacities, pursuant to 42 U.S.C. § 1983, for allegedly violating Ms. Nevarez's Fourth Amendment right by procuring the search warrants used to search Ms. Nevarez's home, car, and cell phone based on knowingly false statements and intentional omissions of material facts.[26] To date, Movants have filed three motions to dismiss invoking the defense of qualified immunity.[27] After considering the first two, the Court found Movants were entitled to qualified immunity but provided Plaintiffs an opportunity to amend their complaint.[28] Movants filed the third motion after Plaintiffs filed their Second Amended Complaint.[29] Based on the new allegations and additional briefing, the Court found Movants were not entitled to qualified immunity and denied their motion to dismiss.[30] Movants appealed the Court's ruling, and it is currently pending before the United States Court of Appeals for the Fifth Circuit. The remaining Defendants have not invoked qualified immunity.

On March 27, 2023, Plaintiffs filed a motion to set a telephone scheduling conference to obtain a trial date and associated pretrial deadlines.[31] Therein, Plaintiffs indicated Defendants

---

[25] R. Doc. 2.
[26] R. Doc. 47 ¶¶ 24–25, 103–08.
[27] *See* R. Docs. 12, 35, 49.
[28] R. Doc. 46.
[29] R. Doc. 49.
[30] R. Doc. 60.
[31] R. Doc. 67.

opposed the motion and would be moving to stay the proceedings until the Fifth Circuit resolves the issue of whether the LSP Defendants are entitled to qualified immunity. This case was then transferred to the undersigned on June 8, 2023. And on June 22, 2023, the Court denied Plaintiffs' motion, set a status conference, and urged any party with a good faith belief that this matter should be stayed, or who believed the Court should not set this matter for a Rule 16 Scheduling Conference, to file an appropriate motion by July 19, 2023.[32] Movants then filed the instant motion.[33]

Movants seek a stay of all discovery in this matter on the grounds that they have invoked the defense of qualified immunity and therefore should not be subjected to discovery burdens until the issue of qualified immunity is resolved by the Fifth Circuit. Plaintiffs do not contest the stay of discovery as to their claims against Movants but argue there is no justification to stay discovery as to their claims against the remaining Defendants who have not invoked qualified immunity.

## LAW AND ANALYSIS

### A. Legal Standard

"Trial courts possess broad discretion to supervise discovery."[34] Federal Rule of Civil Procedure 26(c) allows the court to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause.[35] Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[36]

---

[32] R. Doc. 73.
[33] R. Doc. 74.
[34] *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted).
[35] FED. R. CIV. P. 26(c)(1).
[36] *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garret*, 571 F.2d 302, 3026 (5th Cir. 1990)) (citation omitted).

Qualified immunity shields government officials from individual liability for performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.[37] "The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit."[38]

The Fifth Circuit has clarified that all discovery involving a defendant raising the defense of qualified immunity must be stayed until resolution of the defense of qualified immunity.[39] In *Carswell*, the plaintiff filed suit against numerous defendants under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).[40] The Fifth Circuit concluded the district court abused its discretion by deferring its ruling on the individual defendants' motions to dismiss on qualified immunity grounds and subjecting the defendants to discovery on the plaintiff's *Monell* claims, which created an undue burden in light of increased litigation costs and complications caused by bifurcated discovery.[41] The Fifth Circuit expressly held that the required stay of discovery is not limited to claims to which the defense of qualified immunity is raised.[42] In so ruling, the Fifth Circuit highlighted the Supreme Court's concerns about the burdens of litigation imposed on public officials.[43] It also noted that these same burdens would be present if the Court allowed discovery to proceed against defendants in different capacities or against co-defendants that make no claim for qualified immunity:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop

---

[37] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[38] *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985)).

[39] *See Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) ("The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery.").

[40] *Id.* at 309.

[41] *Id.* at 310–14.

[42] *Id.* at 313.

[43] *Id.*

in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.[44]

In other words, "even 'minimally intrusive discovery'" involving public official defendants is prohibited until resolution of their qualified immunity defense.[45]

B.  *Analysis*

Upon review of the record and the applicable law, the Court finds good cause to stay all discovery in this action until the Fifth Circuit's resolution of the pending appeal regarding Movants' qualified immunity defenses. All parties agree discovery against Movants is impermissible while their qualified immunity defenses remain pending. And the Court finds it very unlikely that discovery could proceed in this particular action against the remaining Defendants without potentially prejudicing and unduly burdening the Movants in the instant Motion. Indeed, considering the factual allegations in the Second Amended Complaint, allowing discovery to proceed against the remaining Defendants would almost certainly require Movants and their counsel "to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position."[46] As such, Movants "would not be free from the burdens of discovery."[47] Accordingly, even in a situation in which discovery against the remaining Defendants is not completely precluded under *Carswell*, the Court finds good cause in this particular case pursuant to Rule 26(c) to exercise its discretion and stay all discovery in this action.

---

[44] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009)).
[45] *Id.* (quoting *Iqbal*, 556 U.S. at 686).
[46] *See Iqbal*, 556 U.S. at 685.
[47] *Id.* at 686.

**CONCLUSION**

**IT IS ORDERED** that Defendants Anthony Dorris and Justin Leonard's Motion to Stay All Discovery Pending Resolution of Defendants' Qualified Immunity Defense by the Fifth Circuit (R. Doc. 74) is **GRANTED**, and all discovery is **STAYED** until further order of the Court.

New Orleans, Louisiana, this 8th day of August, 2023.


_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

8